*Fee Paid*

UNITED STATES DISTRICT COURT

FILED

DISTRICT OF CONNECTICUT

'15 FEB 10  PM 3 38

CIVIL RIGHTS COMPLAINT

*3:15-CV- 177 VLB*

Terry R. Gethers

_____,

Plaintiff(s),

(Full name(s); Do not use et al.)

v.

Robert A. McDonald

Carolyn Mahoney

_____

_____

_____

_____

Defendant(s).

(Full name(s) and capacity, e.g., official capacity, individual capacity,

or official and individual capacities) (Do not use et al.)

## A. PARTIES

1. _Terry Gethers is a citizen of Connecticut who

(Plaintiff) (State)

presently resides at __26 Deme Road Wallingford, CT 06492.

(mailing address)

2. Defendant __Robert A. McDonald is a citizen of _District of Columbia

(name of first defendant) (State)

whose address is_810 Vermont Ave, NW Washington DC 20420

1

and who is employed as _Secretary of Veterans Affair.

(title and place of employment)

2

At the time the claim(s) alleged in this complaint arose, was this defendant acting under

color of state law? ____No____. If your answer is "Yes," briefly explain:

To the extent that they are doing business in the State of Connecticut, I performed my duties as an employee in the State of Connecticut and to which it is subject to the laws of this State concerning C.G.S. and FLSA.

3. Defendant __Carolyn Mahoney is a citizen of _New Hampshire

(name of second defendant) (State)

whose address is _Veterans Affair Medical Center 718 Smyth Rd, Manchester New Hampshire, 03104

and who is employed as _Assistant Chief of Clinical Engineering.

(title and place of employment)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under

color of state law? ____Yes ____. If your answer is "Yes," briefly explain:

To the extent that the employer was doing business in the State of Connecticut, I performed my duties as an employee in the State of Connecticut and to which she is subject to the laws of this State concerning C.G.S. and FLSA.

_____

B. JURISDICTION

1. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that the

   claims arose in this district and Plaintiff resides in this district.

2. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked

   pursuant to 28 U.S.C. §1367(a)  because they are so related to the federal claims in this

action that they form part of the same case or controversy under Article III of the United
States Constitution.

3. 5 U.S.C. § 2302(b)(6) U.S. Merit System non-discrimination clause.

4. 28 U.S.C. §1343.

5. 42 U.S.C. § 1983

6.  28 U.S.C. § 1331

## C. NATURE OF THE CASE

Briefly state the background of your case.

My complaint with the Veteran's Administration Hospital in VISN1 New England has always
been with pre-selection, favoritism, and disparate treatment in its promotional practices and
selections.  Promotions are controlled, and implemented in a blatant and bias fashion. Fair
opportunities are suppressed and manipulated to give a desired outcome. Some of their actions
were questionable in regards to discrimination (and were proven during my EEOC complaint to
be a violation of the Civil Rights Act Title VII), but definitely there were numerous violations of
The Employee's Rights!  There were several Prohibited Personal Practices (PPP) incessantly
implemented against me in regards to promotion.  At the time of application, I was the only
African American Male Engineer over forty, who had trained and groomed most of his future
supervisors.

## D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities have been

violated and that the following facts form the basis of my allegations: (If more space is needed

to explain any allegation or to list additional supporting facts, continue on a blank sheet which

you should label "D. CAUSE OF ACTION.").

Claim I:

3

Supporting Facts:

I have trained and supported over 20 of VA Connecticut's Engineering Interns, solidifying their base and understanding in Network Technologies and Architecture. The last 10 – 12 promotions in VISN 1 have been to all young engineers under the age of 30 years old. I personally have applied for 5 jobs in VISN 1, and was denied for all (Including the Chief and Assistant Chief in which I had held both for 2 years in an Acting capacity. I was Acting Chief of Biomedical Engineering from February 2009 – May 2010 and Acting Assistant Chief of Biomedical Engineering from October 2008 - December 2010. **I was replaced as Acting Chief and Assistant Chief when my Intern graduated after the completion of his degree).** While in the acting capacity I received a lot of praise for the job I was doing. I was entrusted with the program for 2 years, and made some positive changes, but was never rewarded with a bonus like the other managers in VISN1. Hank Stankiewicz (who is now retired) was the Chief of Biomedical Engineering for VISN 1 (and he told me that I would be compensated at the end of the year with a bonus for maintaining both jobs), but that never happened and Carol Mahoney was the Assistant Chief for Biomedical Engineering during these selections. Upon the completion of my acting tenure, I asked Carolyn Mahoney, if I could be restored to a GS 12-10 instead of returning back to a GS 12-6. My request was reasonable, being that the other two engineers (my counterparts were both GS 12-10). In fact I was present during the interview process of Ms. Cheryl Shaw. The Chief of Biomed at the time Kevin Jensen asked Ms. Shaw where she would like to start salary wise on the pay scale? Ms. Shaw stated that she would like to start at a GS 11-3. They started her at a GS 12-10. I asked Kevin why they are starting her there, when she asked for a GS 11. Kevin said "Hank wanted to start her off there, and whatever Hank wants, Hank gets". Ms. Mahoney denied my request, and said the other two engineers were special cases. **Again, I was being treated differently from my counterparts** (who happened to be Caucasian).

I inquired with our HR Assistant Chief Ms. Michelle Avery (who is now deceased) and she informed me of a HR rule that states, if an individual serves in a temporary position for at least 1 year or more, upon the return to their grade they must be placed at the top of that grade. She assured me not to worry about it and that she would personally take care of it, and she did.


Claim II:

Disparate treatment, pre-selection, and given unfair advantage to others is a common practice within the VISN 1 Promotional Management Protocol.

Supporting Facts:

Chris Falkner was an intern who worked for us for two summer of an internship. He performed his regular internship duties at the Providence Rhode Island VA. He was hired by his classmate

Christopher Gutmann (who was my intern at VA Connecticut).  They both were in the University of Connecticut Graduate Biomedical Engineering Program.  Hank Stankiewicz who was a member of the Biomedical Engineering Certification Board was paramount in getting both interns ranked at a higher than normal grade level in spite of the rules, requirement and job descriptions.

According to the VA's own standards, by laws, job description documentation and recruiting protocols, both candidates with a master's degree and limited work experience would only qualify as a GS- 9. Christopher Falkner was ranked as a GS-11/1 and Christopher Gutmann was ranked as a GS-12/6.

Christopher Gutmann was selected as the new Chief and Assistant Chief of Biomedical Engineering, and Christopher Falkner was hired as a GS-11/1.  The following year Christopher Falkner was promoted to a GS-12/1, and Christopher Gutmann was promoted to a GS-13, and the next year a GS-14.  **It took me 16 years to get to a GS-12 and they both obtained that goal in a year or less**.

My background is in the maintenance and integration of the hospital medical equipment and the security of patient records from the medical centers diagnostic equipment into the hospitals database infrastructure.  I saw a great deficiency in the network capable of the interns, new engineers, and older technicians.  I started a program in which I trained all of the VA Connecticut interns, new engineers, and technicians in the fundamentals of Computer Integrated System and networking technologies.  I trained the staff so well; we became very proficient, and self-reliant, that the IT staff gave us our own Administrative rights.  This training was essential and critical to the growth of the Biomedical Engineering department.

After years of this training our staff, and pushing management for network training, I thought the VISN 1 management had finally recognize my endeavors, and desire to push our program forward, when Hank Stankiewicz and Carolyn Mahoney had announced that 3 new promotional opportunities would soon be made available to VISN 1 for Biomedical Engineers as a GS12/GS13. All of the jobs were targeted as a GS-13, and the focus was on network technology.

Christopher Falkner and I shared the same office, and he asked me to work and teach him more about computer information systems in December of 2011.  We worked together, and he asked a great deal of questions pertaining to network technologies and computers. In February 12 2012, at our monthly Engineering meeting Christopher Gutmann made announcement congratulating Christopher Falkner for becoming the new Computer Information Specialist.  They had given him the job without posting it.  Chris and I shared office and we had discussed the project ARK/CIS on numerous occasions.  After the meeting, I asked Chris, how did this all come about?  Chris informed me that Carolyn Mahoney reached out to him and said that she thought that he would be great for the ARK/CIS job and would he be interested.  Chris said yes, but he asked her "Wouldn't the job have to be posted" and her response was that "We can use direct

hire of authority to fill the position without posting" (Which is incorrect, the job must still be posted).

This action introduced unrest, and generated questions as to why the job wasn't posted. One month after the premature announcement, the job was then posted in March 2012, as a straight GS-13 (Chris had just been promoted to a GS-12 in July of 2011). He didn't qualify as a GS-13. The job was then re-posted as a GS 12/13. I decided to apply, on the second posting, even though Chris had been promised the job. The final qualified candidates consisted of only two, Chris and I. None of the many other candidates even qualified. This limited the selection pool, and ensured that the interview process would not consist of a lot of candidates, and be very quick, and deliberate. Chris was unofficially selected and in the position from January 2012 until June 2012 and officially and officially appointed by Ms. Carolyn Mahoney in July 1 2012 – January 2013 when he left and went to private industry.


Claim III:

I spoke to Management well before filing any claims ( In an effort to avert any legal actions, expenses, and embarrassment to the agency). In August 2012, I met with our new appointed Chief of Clinical Engineering, to express my feelings and dismay over my promotional stagnation. I discussed the fact that the last 9 promotions have all been to people under the age of 30 years old. I conveyed my concerns of favoritism, pre-selection, and the concept of a glass ceiling that is limiting my promotional opportunities. I said to Mr. Franklin, that it is not fair to the older, more experienced engineer to train and teach these younger engineers, and then have them leap frog over the experienced engineers. I said "I don't have a problem with youth progressing but why can't there be room at the top for youth and experience?" Mr. Franklin (Who at the time was also under 30 years of age) didn't see it as being that way. I told him I was considering filing an EEOC Complaint and he said that I should if I feel I am being wronged. Prior to filing any claim of wrong doing I applied for every job for advancement posted in our region. I applied for a total of 5 jobs over a 4 year period, and never was selected for any of them. In fact, two of the jobs, I performed for a 2 year period as Acting Chief and Assistant Chief but still wasn't good enough to be selected for the job.

Management was so determined to keep me stagnated and oppressed from advancement, when Christopher Falkner abandoned the VA with a whole 2 years under his belt compared to my 23 years of service, management then posted the job as a GS11/12/13, and when I applied for it a second time (This job had always been posted as a GS12/13 and never as a GS11). I received my confirmation from HR (in February 2013) that I qualified, and would receive an interview if they were done. I later received a notice that the job had been cancelled by the service (in March 2013). In April 2013 an announcement was made that a Technical Career Field (TCF) intern was given the job non-competitively. Again I was denied an opportunity to advance by our

Engineering Management Executives.  Management uses selective manipulation to control employment outcomes, and they also apply undocumented rules to appoint interns that have been very obedient to their agenda, and oppress the more senior engineer who has invested vast amount of time training and teaching the younger inexperienced Engineer.

According to Engineering Management, they are compelled to place these young engineers in these advanced positions (an undocumented rule often utilized by management) however when the only African American TCF Female Engineer with 5 years of engineering experience, and a Master's Degree  (Valerie Taylor) applied for one of these engineering opportunities in VISN 1, she was not selected. Again, this was selective manipulation by management to determine the desired outcome of who will get the job.  This was a direct violation of management's own undocumented protocol regarding a TCF intern hire.  **Management was so determined to oppress all promotional aspects for me; they went out of their way to re-post the same job Christopher Falkner had abandoned, as a GS-11/12/13 and then they said, "Oh we are sorry, but protocol mandates that we give this job to a TCF Intern".**  <u>This was a deliberate and calculated act by management to punish me for speaking out, and filing an EEOC Complaint</u>. **To add insult to injury, I am now the main point of contact for VA Connecticut and mandated to attend these ARK/CIS meetings**.  I am acting as the local project engineer responsible for implementing all of the prep work for VA Connecticut's ARK/CIS program (that I didn't qualify for), and its future deployment.  I meet weekly with the younger Project Engineer whom was appointed over me by management.

E. Previous Lawsuits

1. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

    _____No _____.  If your answer is Yes describe each lawsuit.  (If there is more than one lawsuit, describe the additional lawsuits using this same format on a blank sheet which you should label "E. PREVIOUS LAWSUITS.")

a. Parties to the previous lawsuit:

Plaintiff(s): Terry Gethers

Defendant(s): Robert A. MacDonald and Carolyn Mahoney

b. Name and location of court and docket number Boston, Ma and Docket# 520-2014-00025X

   c. Disposition of lawsuit. (For example, was the case dismissed? Was it appealed? Is it still pending?)   Dismissed

   d. Issues raised: Continuous Prohibited Personnel Practice

   e. Approximate date of filing lawsuit: Not applicable

   f. Approximate date of disposition: Not Applicable

2. If you have filed other lawsuits in this court in the last ten (10) years that are not related to the acts complained of in Part D, please list them. (If you need additional space, use a blank sheet which you should label "E. PREVIOUS LAWSUITS.") Not Applicable

F. Request for Relief

I request the following relief:

Wherefore Plaintiffs claim the following:

1. Compensatory damages;

2. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

3. Punitive damages and expert witness fees;

4. Prejudgment interest;

5. That this Court retain jurisdiction over this matter;

6.  Trial by jury;

7.  Such other relief as the Court deems just, fair and equitable.


G. Jury Demand

Do you wish to have a jury trial? Yes


-------------------------------------------------    _Terry   Gethers_
--------

Original Signature of Attorney (if any)          Plaintiff's Original Signature


-------------Pro Se Litigant----------------------
--------                                         _Terry Gethers_

                                                 Terry Gethers


Telephone# (203) 936-9111                        Telephone# (203) 214-4507 (cell)

57 State Street North Haven, CT 06473            26 Deme Road Wallingford, CT 06492

mail@employeerightsllc.com                       Terry.Gethers@va.gov

Declaration Under Penalty of Perjury

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above
action, that he/she has read the above complaint and that the information contained in the
complaint is true and correct. 28 U.S.C 1746; 18 U.S.C 1621


Executed at _____ on _2/10/15_
                 (location)                     (Date)

_Terry Gethers_
Plaintiff's Original Signature

9